## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KIMBERLY SMITH and STEVE SMITH, on behalf of themselves, and all others similarly situated, | Case No.: 17-cv-3712 |
| Plaintiffs, | |
| v. | |
| PREMIER DERMATOLOGY and FOREFRONT DERMATOLOGY, | |
| Defendants. | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Kimberly Smith and Steve Smith ("Plaintiffs") bring this class action complaint against DefendantsPremier Dermatology ("Premier") and Forefront Dermatology("Forefront") (together referred to as "Defendants") to stop Defendants' practice of sending unsolicited text messages to cellular telephones of consumers nationwide in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to obtain redress for all persons injured by its conduct. Plaintiffs allege as follows upon personal knowledge as to their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## JURISDICTION AND VENUE

1.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012); *Brill v.*

*Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005). Subject matter jurisdiction over this action is further appropriate in this Court pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Class is a citizen of a state different than Defendants, (ii) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

2.      The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transact significant amounts of business within this District.

3.      Specifically, personal jurisdiction over Defendants is proper in this District because (1) Defendant Premier has its primary place of business located at 2051 Plainfield Rd., Crest Hill, Il 60403,as well as an additional five clinics located throughout Illinois; (2) Defendant Forefront, who acquired Premier in November of 2015, has a clinic located at 2051 Plainfield Rd., Crest Hill, Il 60403,as well as an additional eight clinics located throughout Illinois; (3) Defendants derive revenue from transactions occurring in Illinois; (4) Defendants employ Illinois residents; and (4) Defendant Premier is registered to do business in Illinois as entity file number 49941471and Defendant Forefront is registered to business in Illinois as entity file number 68566711.

## **NATURE OF ACTION**

4.      The TCPA strictly forbids nuisance text messages exactly like those alleged in this Complaint – intrusive messages to private cellular phones, placed to numbers obtained without the prior express consent of the call recipients.

5.      Defendants' violations caused Plaintiffs and members of the Class actual harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited text messages, as well as the violation of their statutory rights.

6.     Plaintiffs and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Defendants' conduct, and is likely to be redressed by a favorable decision in this action.

7.     Plaintiffs seek an injunction stopping Defendants from sending unsolicited text messages, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

8.     Plaintiff Kimberly Smith is, and at all times mentioned was, a resident of the State of Illinois, City of Yorkville. She is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (32).

9.     Plaintiff Steve Smith is, and at all times mentioned was, a resident of the State of Illinois, City of Yorkville. He is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (32).

10.     Headquartered in Crest Hill, Illinois, Defendant Premier is a dermatology practice which consists of six offices throughout Illinois.  Premier is referred to as "A Forefront Dermatology Practice."  Premier is registered to do business in Illinois and is a "person" as defined by 47 U.S.C. § 153 (32).

11.     Headquartered in Manitowoc, Wisconsin,Defendant Forefront is one of the largest dermatology practices in the United States, with more than 70 clinic locations across nine states, including nine clinics in Illinois.  In November of 2015, a transaction closed between Premier and Forefront which added Premier's six Illinois based clinics to Forefront's network.  Forefront is registered to do business in Illinois and is a "person" as defined by 47 U.S.C. § 153 (32).

12. Plaintiffs allege that at all times relevant herein Defendants conducted business in the state of Illinois, and within this District.

## THE TELEPHONE CONSUMERS PROTECTION ACT OF 1991 ("TCPA")
## 47 U.S.C. §§ 227 *et seq.*

13. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

14. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

16. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[4] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

17. On July 10, 2015, the FCC released a Declaratory Ruling wherein it was confirmed that even if a consumer originally did provide "prior express consent" that caller has a right to revoke consent, using any reasonable method, including orally or in writing, that clearly expresses his or her desire not to receive further calls.[6]However, even before the FCC Order that consent to receive a text message could be revoked, the Mobile Marketing Association declared in October 2012 in its *U.S. Consumer Best Practices for Messaging* that "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program…" and "… if the subscriber sent STOP or STOP ALL to the short code, they are opted out of all programs they were enrolled in on that short code."

18. A text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

---

[4]*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[5]*FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

[6]*In Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 15-72 (FCC July 10, 2015) available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (last visited on July 17, 2015)

## **FACTUAL ALLEGATIONS**

19.     In an effort to gain business andpromote their dermatology practice, Defendants routinely contact prospective customer through mass text campaigns, without their consent to be texted.  Defendants continue to text message those prospective customers even after he or she revokes any consent for future contact from Defendants.

20.     In regard to Ms. Kimberly Smith, in or around the beginning of 2016, Ms. Smith visited Defendants for a small procedure.

21.     After the visit and months later, in or around the Fall of 2016, Ms. Smith began receiving unwanted and unsolicited text messages from Defendants, approximately one text message per week.

22.     For example, on April 18, 2017, Ms. Smith received a text message from Defendants with the message "From Premier Dermatology: Stubborn fat? Liposculpture is your solution Reply BEGIN to converse with me, HELP for help, STOP to opt out.  Msg&Data rates apply.  The text message came from the SMS code 95736.

23.     Due to the insensitive nature of the text message, the particular message was unusually abusive.

24.     Despite texting the work "STOP" after receipt of the text on April 18, 2017, Ms. Smith continues to receive text messages from Defendants.

25.     In addition to text messages from Defendants, Ms. Smith also receives unsolicited emails from Defendants.  On April 18, 2017, after receiving an email from Defendants from the email address info@pdskin-il.com, Ms. Smith replied to the email stating "DO NOT TEXT ME ANYMORE!!."  However, despite these written revocations of any alleged consent, Ms. Smith continues to receive unsolicited text messages from Defendants.

26.     Plaintiff Steve Smith visited an office of Defendants at the same time as Ms. Smith in early 2016 and also began receiving unwanted and unsolicited text messages in the Fall of 2016.  Mr. Smith also received approximately one text message per week.

27.     These unsolicited text messages placed to Plaintiffs' wireless telephones were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiffs' cellular telephone.

28.     The telephone numbers that Defendants, or its agents, called was assigned to a cellular telephone service for which Plaintiffs incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

29.     These text messages constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

30.     Plaintiffs did not provide Defendants or its agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(A) and/or has revoked any alleged prior express consent.

31.     These text messages by Defendants or its agents therefore violated 47 U.S.C. § 227(b)(1).

32.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants to demonstrate that Plaintiffs provided express consent within the meaning of the statute.

/ / /

/ / /

## CLASS ACTION ALLEGATIONS

33.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and on behalf of all others similarly situated ("the Class").

34.     Plaintiffs represent, and are members of the Class, consisting of all persons within the United States who received any unsolicited text messages from Defendants or its agents on their cellular telephones through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3), which text messages by Defendants or its agents were not made for emergency purposes or with the recipients' prior express consent, within four years prior to the filing of this Complaint through the date of trial.

35.     Defendants and its employees or agents are excluded from the Class.  Plaintiffs do not know the number of members in the Class, but believes the Class members number in the hundreds of thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

36.     Plaintiffs and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through its agents, illegally contacted Plaintiffs and the Class members via their cellular telephones by using unsolicited text messages, thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, and invading the privacy of said Plaintiffs and the Class members.  Plaintiffs and the Class members were damaged thereby.

37.     This suit seeks only statutory damages and injunctive relief for on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiffs reserve the right to expand the Class definition to seek recovery on

behalf of additional persons as warranted as facts are learned in further investigation and discovery.

38.     The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendants' records or Defendants' agents' records.

39.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

    a. Whether, within the four years prior to the filing of this Complaint through the date of trial, Defendants or its agents sent text messages without the recipients' prior express consent (other than a telephone call  made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system, to any telephone number assigned to a cellular telephone service;

    b. Whether the equipment Defendants, or its agents, used to make the telephone calls in question was an automatic telephone dialing system as contemplated by the TCPA;

    c. Whether Defendants, or its agents, systematically made telephone calls to persons who did not previously provide Defendant with their prior express consent to receive such text message calls;

    d. Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

e.  Whether Defendants and its agents should be enjoined from engaging in such conduct in the future.

40.     As persons that received at least one unsolicited text message to their cell phone without Plaintiffs' prior express contest, Plaintiffs are asserting claims that are typical of the Class.  Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffshave no interest antagonistic to any member of the Class.

41.     Plaintiffs and the members of the Class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct.  Because of the size of the individual Class member's claims, few, if any, Class members could afford to individually seek legal redress for the wrongs complained of herein.

42.     Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

43.     A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable.  Class-wide damages are essential to induce Defendants to comply with federal law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendantsare small because the maximum statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants'misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because

individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

44.     Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT 1

### NEGLIGENT VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227 *ET SEQ.*

45.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

46.     Each such text message call was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.  By using such equipment, Defendants were able to effectively send thousands of text message simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.  These text messageare analogous to a prerecorded voice made without the prior express consent of the Plaintiffs.

47.     The foregoing acts and omissions of Defendants and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

48.     As a result of Defendants', and Defendants' agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

49.     Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT 2

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA

### 47 U.S.C. §§ 227 *ET SEQ.*

50.     Plaintiffs incorporate by reference the above paragraphs 1 through 49inclusive, of this Complaint as though fully stated herein.

51.     Each such text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.   By using such equipment, Defendantswere able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.   These text message are analogous to a prerecorded voice made without the prior express consent of the Plaintiffs.

52.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq.*

53.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

54.     Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**PRAYER FOR RELIEF**

**Wherefore**, Plaintiffs respectfully request the Court to grant Plaintiffs and the Class members the following relief against Defendants:

### FIRST COUNT FOR NEGLIGENT VIOLATION OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

55.     As a result of Defendants', and Defendants' agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

56.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiffs seek injunctive relief prohibiting such conduct in the future.

### SECOND COUNT for KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

57.     As a result of Defendants', and Defendants' agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

58.     Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

* * *

59.     An order certifying the Class as defined above, appointing PlaintiffsKimberly Smith and Steve Smith as Class Representatives, and appointing Ronald A. Marron of the Law Offices of Ronald A. Marron as Class Counsel.

60.     An award of reasonable attorneys' fees (in the event of a class recovery) and costs.

61.     Any other relief the Court may deem reasonable, just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiffs hereby demands that Defendants take affirmative steps to preserve all recordings, data, emails, documents and all other tangible things that relate to the allegations herein, Plaintiffs or the putative class members, or the sending of text messages, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiffs or the account in question, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendantsare aware of any third party that has possession, custody or control of any such materials, Plaintiffs demand that Defendants request that such third party also take steps to preserve the materials, and notify the undersigned of the circumstances immediately so that counsel may take appropriate action. This demand shall not narrow the scope of any independent document preservation duties of Defendants.

Dated:  May 17, 2017                    s/ Jeffrey M. Salas
                                        By: Jeffrey M. Salas
                                        **SALAS WANG LLC**
                                        73 W. Monroe, Suite 219
                                        Chicago, Illinois 60603
                                        Telephone: (312)803-4963


Dated:  May 17, 2017                    s/ Ronald A. Marron
                                        By: Ronald A. Marron
                                        **LAW OFFICES OF RONALD A. MARRON**
                                        RONALD A. MARRON (CA Bar No. 175650)
                                        ALEXIS WOOD (CA Bar No. 270200)

KAS GALLUCCI (CA Bar No. 288709)
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***