IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY SMITH, STEVEN SMITH and OLWEN JAFFE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 17 C 3712 |
| v. | ) ) | Judge Jorge L. Alonso |
| PREMIER DERMATOLOGY, FOREFRONT MANAGEMENT, LLC, and ERELEVANCE CORPORATION, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Kimberly Smith, Steven Smith, and Olwen Jaffe, bring this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, against defendants, Premier Dermatology, Forefront Management, LLC, and eRelevance Corporation. The case is before the Court on defendants' motion for summary judgment. For the following reasons, the motion is granted.

**BACKGROUND**

Defendant eRelevance Corporation ("eRelevance") is in the business of providing "mobile marketing services," especially for "physician groups, surgery centers, or other health care providers." (Pl.'s LR 56.1 Resp. ¶¶ 1, 8, ECF No. 119 (Sealed), ECF No. 116 (Redacted).) In particular, eRelevance maintains a "proprietary software system" that it uses "to send marketing communications . . . , including text messages," to its clients' patients or customers. (*Id.* ¶ 11.) Generally, eRelevance's clients submit a list of customer or prospective customer contact information, which is uploaded to the eRelevance system, and they select "'criteria' for which

types of contacts they wish to reach." (Defs.' LR 56.1 Resp. ¶¶ 10, 13, ECF No. 137 (Sealed), ECF No. 132 (Redacted).) Based on the criteria clients select, the eRelevance system creates a list of contacts from its database, and eRelevance employees build a text-message marketing campaign by customizing template text messages to fit the clients' specifications. (*Id.* ¶¶ 15-16.) An eRelevance employee then presses a button to run the campaign, and the eRelevance system automatically sends text messages to each of the contacts in the list. (*Id.* ¶ 17.)

According to eRelevance, the system "does not currently have, and has never had, the capacity to generate random or sequential telephone numbers"; it relies entirely on client-provided contact information, which it filters to select phone numbers to which to send text messages. (Pl.'s LR 56.1 Resp. ¶ 15, *see id.* ¶¶ 14-21.) Plaintiffs do not directly dispute this fact, although they purport to dispute it by pointing out that eRelevance's "ruby virtual machine," the component of its system that actually sends the text messages, can be "programmed to do anything that is computationally possible." (*Id.* ¶ 15 (internal quotation marks and alterations omitted).)

After receiving a number of text messages from eRelevance sent on behalf of defendants Premier Dermatology and Forefront Management, LLC, plaintiffs brought this suit, alleging that defendants violated the Telephone Consumer Protection Act ("TCPA") by sending them text messages via an "automatic telephone dialing system" without their consent, *see* 47 U.S.C. § 227. Defendants now move for summary judgment.

## DISCUSSION

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). The Court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

In pertinent part, the TCPA provides as follows:

> **(1) Prohibitions**
> It shall be unlawful . . .
>> **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any *automatic telephone dialing system* or an artificial or prerecorded voice--
>>> **(iii)** to any telephone number assigned to a . . . cellular telephone service, . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]
>
> . . .
> **(3) Private right of action**
> . . .
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available . . . .

47 U.S.C. § 227(b) (italicized emphasis added). The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity -- **(A)** to store or produce telephone numbers to be called, using a random or sequential number generator; and **(B)** to dial such numbers." 47 U.S.C. § 227(a)(1).

For purposes of the present motion, the parties' dispute centers on the TCPA's definition of an automatic telephone dialing system (hereafter, "ATDS"). Defendants argue that they are entitled to summary judgment because the eRelevance system cannot generate "random or sequential" phone numbers, and it is therefore not an ATDS. Plaintiffs respond that defendants misread the statutory definition, which includes devices that lack the capacity to generate random or sequential numbers but can "dial stored numbers automatically." *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).

## I. EFFECT OF *ACA INTERNATIONAL*

"The TCPA vests the [Federal Communications] Commission ["FCC"] with responsibility to promulgate regulations implementing the Act's requirements." *ACA Int'l v. FCC*, 885 F.3d 687, 693 (D.C. Cir. 2018). In 1992, the FCC promulgated regulations that adopted the statutory definition of an ATDS essentially verbatim, without elaborating. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8792 App'x B (1992) (amending 47 CFR § 64.1200) ("The terms 'automatic telephone dialing system' and 'autodialer' mean equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers."). In a series of regulatory rulings beginning in 2003, the FCC addressed the definition of an ATDS under the TCPA, and plaintiffs argue that these rulings are binding and controlling for purposes of the present motion. Defendants argue, however, that this series of rulings is no longer good law under *ACA International v. FCC*, 885 F.3d at 703, which explicitly set aside the relevant portions of the FCC's 2015 ruling, the most recent in the series, and, according to defendants, necessarily invalidated the remainder of the series, to the extent they addressed the definition of an ATDS. As a result, defendants argue, the statutory language alone provides the applicable definition of an ATDS.

4

In its 2003 ruling, the FCC interpreted the TCPA's ATDS definition to include "predictive dialers," equipment that was "not conceptually different" from a classic ATDS, which automatically dialed numbers randomly or sequentially, but that, "when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls" by calling stored numbers "in a manner that maximizes efficiencies for call centers" by "ensur[ing] that when a consumer answers the phone, a sales person is available to take the call." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14090-91 ¶¶ 130-31 (2003). "The principal feature of predictive dialing software is a timing function, not number storage or generation." *Id.* at 14091 ¶ 131. Generally, a predictive dialer's "hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," although some predictive dialers are not "capable of being programmed for random or sequential dialing." *Id.* at 14091 ¶ 131, 14091 n.432. The FCC explained that a predictive dialer qualifies as an ATDS because the essence of the call activity that the TCPA sought to prohibit was automated dialing to certain kinds of phone numbers, which is what a predictive dialer does, regardless of whether it "create[s] and dial[s] 10-digit telephone numbers arbitrarily" or only dials a "given set of numbers." *Id.* at 14091-93 ¶¶ 131-33. In 2008, the FCC reaffirmed the ruling, declaring that nothing "warrant[ed] reconsideration of [the 2003] findings." *See Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 930-31 (N.D. Ill. 2018) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 567 ¶ 14 (2008)) (internal quotation marks omitted).

In its 2015 declaratory ruling, the FCC again "reaffirm[ed]" this interpretation of the statute, but it also stated that an ATDS must have the "capacity"—*i.e.*, the "potential ability"—"to

dial random or sequential numbers," even if it lacks the "present ability" to do so. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7972 ¶ 10, 7974 ¶ 15, 7975-76 ¶¶ 19-20 (2015) (internal quotation marks omitted).

Upon consolidated petitions for judicial review of this ruling under the Hobbs Act, 28 U.S.C. § 2342(1), *see also* 47 U.S.C. § 402(a), the D.C. Circuit held in *ACA International* that the FCC's approach could not be sustained. The court reasoned that (1) whatever one understands the essential functions of an ATDS to be, interpreting "capacity" to mean "potential ability" rather than "present ability" made the definition unreasonably broad—so broad, in fact, as to sweep within it any common smartphone that could download an automatic dialing app, 885 F.3d at 695-700, and (2) it was incoherent and unreasonable to "reaffirm" the 2003 ruling while also insisting that an ATDS must have the "capacity to dial random or sequential numbers," a requirement that the 2003 ruling seemingly rejected, 885 F.3d at 701-03. Based on this reasoning, the D.C. Circuit "set aside" the portion of the 2015 ruling that sought to "expl[ain] . . . which devices qualify as an ATDS." *Id.* at 695; *see id.* at 703.

Courts have differed in determining the scope and impact of *ACA International*. Some have concluded that it wiped away not only the FCC's 2015 ruling but its whole series of rulings on the definition of an ATDS beginning in 2003, *see, e.g., Marks*, 904 F.3d at 1047, 1049, while others have concluded that it merely set aside portions of the 2015 ruling, without affecting the validity of the FCC's prior rulings, *see, e.g., Maes v. Charter Commc'n*, 345 F. Supp. 3d 1064, 1069 (W.D. Wis. 2018). On this issue, the Court agrees with the decisions in the former category.

In *ACA International*, the D.C. Circuit specifically rejected the FCC's argument that the court lacked jurisdiction "to entertain petitioners' challenge concerning the functions a[n] [ATDS] device must be able to perform" on the ground that "the issue was resolved in prior agency

6

orders—specifically, declaratory rulings in 2003 and 2008," from which there had been no timely appeal. 885 F.3d at 701. The court explained that the fact that the FCC's latest ruling merely "purport[ed] to reaffirm the prior orders" did not suffice to "shield the agency's pertinent pronouncements from review" because petitioners had "covered their bases by filing petitions for both [1] a declaratory ruling and [2] a rulemaking" concerning the functions that an ATDS must be able to perform, and the subsequent ruling was "reviewable on both grounds." *Id.* The court cited *Biggerstaff v. FCC*, 511 F.3d 178, 184-85 (D.C. Cir. 2007), which explained that a petition for rulemaking is "ordinarily the appropriate way in which to challenge a longstanding regulation on the ground that it is violative of statute," *id.* at 184 (internal quotation marks omitted) (citing *Pub. Citizen*, 901 F.2d at 152), and "an official reinterpretation of an old rule that creates a new opportunity to challenge the continuation of that rule triggers reopening," 511 F.3d at 185.

In *Marks*, the Ninth Circuit characterized *ACA International* as having "concluded that the parties' 2015 rulemaking petition to the FCC reopened consideration of the definition of ATDS established in the FCC's 2003 order, as well as its subsequent rulings." 904 F.3d at 1047 (citing *Biggerstaff*, 511 F.3d at 185 ("An agency's reconsideration of a rule in a new rulemaking constitutes a reopening when the original rule is 'reinstated' so as to have renewed effect." (quoting *Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 152-53 (D.C. Cir. 1990))). Although the D.C. Circuit's reasoning was not explicit in this regard, the citation to *Biggerstaff* is telling, and this Court agrees with the Ninth Circuit's reading of it. *See Marks*, 904 F.3d at 1047; *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1161 (N.D. Ill. 2018) (citing *Marks*) ("The 2015 FCC order 'reaffirmed' its earlier orders, and while that word choice is different than 'reopening' or 'reinstating,' its import is the same—the FCC reviewed its past treatment of ATDS functionality, . . . the agency understood its option to revisit its definitions when confronted with arguments

7

about the statutory text[,] [and it] reaffirmed and reiterated its approach, which brought the entire agency definition of ATDS up for review in the D.C. Circuit."); *see also Pub. Citizen*, 901 F.2d at 152-53 ("We believe the law to be that where an agency reiterates a rule or policy in such a way as to render the rule or policy subject to renewed challenge on any substantive grounds, a coordinate challenge that the rule or policy is contrary to law will not be held untimely because of a limited statutory review period."). After *ACA International*, neither the 2015 ruling nor the FCC's prior orders addressing the definition of an ATDS are binding.

## II. INTERPRETING THE STATUTORY DEFINITION

Given that the definition of an ATDS in the FCC's 1992 regulation merely parrots the statutory language, and with the FCC's more recent interpretations of the definition pruned away by *ACA International*, "only the statutory definition as set forth by Congress in 1991 remains." *Marks*, 904 F.3d at 1049. Thus, the Court's task is to determine, "as an original matter," *Pinkus*, 319 F. Supp. 3d at 936, whether the eRelevance system qualifies as an ATDS under the definition set forth in the text of the TCPA, *see* 47 U.S.C. § 227(a)(1).

> "[W]hen interpreting a statute, we must begin with its text and assume 'that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Middleton v. City of Chi.*, 578 F.3d 655, 658 (7th Cir. 2009) (quoting *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004)). "When a statute is unambiguous, we must enforce the plain meaning of the language enacted by Congress." *Trs. of the Chi. Truck Drivers, Helpers and Warehouse Workers Union (Ind.) Pension Fund v. Leaseway Transp. Corp.*, 76 F.3d 824, 828 (7th Cir. 1996) (internal quotation marks omitted).

*Our Country Home Enterprises, Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 791 (7th Cir. 2017) (internal citations altered).

As stated above, the TCPA defines an ATDS as follows:

**(1)** The term "automatic telephone dialing system" means equipment which has the capacity--

> **(A)** to store or produce telephone numbers to be called, using a random or sequential number generator; and
> **(B)** to dial such numbers.

47 U.S.C.A. § 227(a). The parties urge competing interpretations of this language, differing as to whether the ATDS must be able to generate "random or sequential" numbers. Defendants, relying heavily on *Pinkus*, argue that the "plain text" of the statutory definition, as well as the FCC's pre-2003 interpretations of it, show that "equipment qualifies as an ATDS only if it has the capacity to 'function . . . by generating random or sequential telephone numbers and dialing those numbers.'" 319 F. Supp. 3d at 939 (quoting *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018)). Plaintiffs, relying heavily on *Marks*, argue that the statute should be read as if it defined an ATDS as "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically." 904 F.3d at 1053.

There is a certain allure to the conclusion in *Marks*, to the extent one agrees that a "particular problem" Congress sought to "alleviate" in the TCPA was, as the FCC put it in its 2003 order, "an increasing number of automated . . . calls to certain categories of numbers," regardless of how the numbers were generated. *See* 18 F.C.C. Rcd. at 14092 ¶ 133. But the 2003 order is no longer binding or in force, and with only the bare statutory language for guidance, the Court cannot agree with plaintiffs that the plain text of the statutory definition can bear their proffered interpretation.

While this Court might quibble with the grammatical analysis of *Pinkus* in some particulars, it agrees with its central insight that the phrase "using a random or sequential number generator," following the phrase "to store or produce telephone numbers to be called," is "best understood to describe the process by which those numbers are generated in the first place." 319

9

F. Supp. 3d at 938. As the court explained, it is "grammatically unlikely" that the phrase, "using a random or sequential number generator," "modifies only 'produce' and not 'store,'" because "'a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one where the phrase is separated from the antecedents by a comma.'" *Id.* (quoting *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 1000 (9th Cir. 2017)). Some courts have struggled to see "how a number generator could be used to 'store' telephone numbers," *see Pinkus*, 319 F. Supp. 3d at 938, but this Court finds nothing so strange about it. "The word 'store' ensures that a system that generated random numbers and did not dial them immediately, but instead stored them for later automatic dialing (after, for example, some human intervention in activating the stored list for dialing) is an ATDS." *Johnson*, 346 F. Supp. 3d at 1162 n.4. Thus, "the phrase 'using a random or sequential number generator' applies to the numbers to be called,"—specifically, it describes how they were generated for calling—"and an ATDS must either store or produce those numbers (and then dial them)." *Id.* at 1162.

In summary, then, the plain text of the statutory definition provides that an ATDS is a device that (1) stores or produces telephone numbers that (2) were randomly or sequentially generated and (3) dials them automatically.

Because the Court finds that the statutory definition is not ambiguous, it need not reach plaintiffs' arguments about "the context and the structure of the statutory scheme." *See Marks*, 904 F.3d at 1051. But even if the Court were to consider them, they are unpersuasive.

Plaintiffs argue that the statute's exemption for ATDS calls made with "prior express consent of the called party" is meaningless if an ATDS must generate numbers randomly or sequentially, because no one using an ATDS to make calls at random would have any opportunity to determine whether the called party had consented to the call. Similarly, the TCPA allows for

treble damages for willful or knowing violations, 47 U.S.C. § 227(b)(3), but this provision, too, according to plaintiffs, is meaningless if applied to ATDS calls made at random, for a similar reason: calling at random could never be a willful or knowing violation because the caller would never know in advance that the called party had not consented to the call.  But the Court is not convinced.  First, it does not follow from the fact that all ATDSs must have the capacity to use randomly or sequentially generated numbers that they *cannot but* call numbers at random or in sequence; rather, "it is possible to imagine a[n] [ATDS] device that both has the capacity to generate numbers randomly or sequentially and can be programmed to avoid dialing certain numbers, including numbers that belong to customers who have not consented to receive calls from a particular marketer."  *Pinkus*, 319 F. Supp. 3d at 939.  Second, even assuming no such device were possible and ATDS calls were necessarily to random or sequential numbers, it does not follow that the "prior express consent" and "willful or knowing violation" language in the statute is meaningless or superfluous because in neither case does the language apply only to ATDSs.  In 47 U.S.C. § 227(a)(1)(A), "prior express consent" exempts a caller from liability for making any call to a cellular phone "using any [ATDS] *or an artificial or prerecorded voice*." *Id.* (emphasis added).  The "willful or knowing violation" language applies not only to the prohibition on calls to cellular phones using an ATDS or artificial or prerecorded voice in § 227 (a)(1)(A) but also to the similar prohibition on such calls to residential phones in subsection (B), the prohibition on junk faxes in subsection (C), and so on.  It might well have been Congress's intention for these particular provisions to do little or no work in relation to ATDS calls; the Court disagrees with plaintiffs that it would be absurd to so interpret the statute.

Similarly, plaintiffs argue that the TCPA's exemption for calls made to collect government debt, *see* 47 U.S.C. § 227(b)(1)(A)(iii), would serve no purpose if an ATDS must be capable of

generating numbers randomly or sequentially; any caller seeking to collect a debt would attempt to call the debtor's number, not a random number. But again, this argument ignores the "artificial or prerecorded voice" language in § 227(a)(1)(A), which provides an independent basis for the exemption.

More fundamentally, whatever slight persuasive value plaintiffs' structure-and-context arguments might have, they cannot overcome the plain meaning of the statutory language. The TCPA defines an ATDS as a device that is capable of using randomly or sequentially generated numbers. It is not genuinely disputed that the eRelevance system does not currently have, and at no point did have, the capacity to use randomly or sequentially generated numbers for its marketing campaigns; eRelevance only had the capacity to send text messages to client-provided phone numbers.

Plaintiffs purport to dispute this fact by citing an eRelevance executive's deposition testimony that the system can be "programmed to do anything that is computationally possible." (Pl.'s LR 56.1 Resp. ¶ 15.) But this is insufficient to create a genuine dispute of fact because, as *ACA International* explained, it is the system's "present capacity," not its "potential capacity," that matters. 885 F.3d at 695-96, 699-700. The Court agrees with the D.C. Circuit that interpreting the word "capacity" in the TCPA's definition of an ATDS to mean "potential capacity," *i.e.*, capacity a device lacks at present but might gain after a modification such as an app download, is "utterly unreasonable in the breadth of its regulatory inclusion." *Id.* at 699 (internal quotation marks and alteration omitted). But this unreasonable interpretation, soundly rejected in *ACA International*, is exactly what plaintiffs urge by suggesting that the eRelevance system is an ATDS because it can be "programmed" to generate random or sequential numbers. What matters is not what the device has the potential to do, depending on how it might be "programmed" in the future,

12

but what it can actually do, and it must be able to use randomly or sequentially generated numbers. Plaintiffs have not shown that there is a genuine factual dispute as to whether the eRelevance system could use randomly or sequentially generated numbers when they received the offending text messages.

The proposed testimony of plaintiffs' expert witness, Randall Snyder, is of no help to them in this regard. Mr. Snyder proposes to testify that the eRelevance system is an ATDS under the TCPA because it automatically sends text messages to stored numbers. (*See* Snyder Report ¶¶ 69-75, ECF No. 109-1.) But, as the Court has explained, that is not the proper standard; an ATDS must have the capacity to use randomly and sequentially generated phone numbers. Plaintiffs do not dispute that Mr. Snyder does not propose to testify that the eRelevance system had or has that capacity (Pls.' LR 56.1 Resp. ¶¶ 16, 20),[1] nor have plaintiffs pointed to other evidence creating a genuine factual dispute on that point.

Because the eRelevance system cannot use randomly and sequentially generated phone numbers, the system does not qualify as an ATDS. Defendants' text-message marketing campaigns therefore did not violate the TCPA, and defendants are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [99] is granted. Defendants' motion to exclude Randall Snyder's expert testimony [104] is denied as moot. eRelevance's motion [158] to withdraw attorney Weingart's appearance is granted. Civil case terminated.

---

[1] As a result of this deficiency in Mr. Snyder's testimony, and based on the Court's interpretation of the TCPA's definition of an ATDS, defendants are entitled to summary judgment irrespective of Mr. Snyder's testimony, and the Court need not reach defendants' *Daubert* motion to exclude it (ECF No. 104), which is denied as moot.

**SO ORDERED.**                          **ENTERED: September 9, 2019**

                                                           **HON. JORGE ALONSO**
                                                           **United States District Judge**